**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

THOMAS LEE ROYAL, JR.,
Petitioner-Appellant,

v.

JOHN B. TAYLOR, Warden, Sussex I
State Prison,
Respondent-Appellee.

No. 99-3

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge; Robert R. Merhige, Jr.,
Senior District Judge.
(CA-96-956-3)

Argued: June 11, 1999

Decided: August 16, 1999

Before LUTTIG, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Luttig and Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Barbara Lynn Hartung, Richmond, Virginia, for Appel-
lant. Katherine P. Baldwin, Assistant Attorney General, OFFICE OF
THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.
**ON BRIEF:** Gerald T. Zerkin, GERALD T. ZERKIN & ASSO-
CIATES, Richmond, Virginia, for Appellant. Mark J. Earley, Attor-

ney General of Virginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellee.

_____

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Thomas Lee Royal Jr. pled guilty to murdering Officer Kenneth Wallace, a Virginia policeman. The state court sentenced him to death. After exhausting his state remedies, Royal filed a petition for federal habeas relief, which the district court dismissed. We affirm.

I.

On February 21, 1994, after drinking and smoking marijuana, Royal, Yancy Mitchener, Willie Cardell Sanders, and Eldred Acklin gathered in the parking lot of a shopping center in Hampton, Virginia. According to his recorded confession, Royal distributed .25-caliber guns to Mitchener and Acklin, a .32-caliber gun to Sanders, and kept for himself a .380-caliber gun. The armed men then set out to find and kill Hampton Police Officer Curtis Cooper, against whom they had some grudge. Instead, the men encountered Officer Wallace in his police cruiser. Royal acknowledged that he realized Officer Wallace was not Cooper, but that he proceeded to shoot the officer anyway.

Royal confessed that "[Officer Wallace] pulled up and, you know, I leaned on the car, getting off the street, and he said, Are you drunk? And I turned around and said, No sir, I fired two shots." After shooting Officer Wallace, Royal "just turned around and walked away." Mitchener then approached Officer Wallace's car and, according to Royal, began shooting into the cruiser while screaming and laughing. Acklin also fired shots at the police vehicle.

A local resident, who had heard the shots, found Officer Wallace shortly thereafter. When the neighbor arrived, the door to the cruiser was wide open and the driver's window was shattered, leaving glass on the ground under the open door. Officer Wallace was seated in his cruiser, with several visible gunshot wounds to the head. He died four

2

days later from the bullet wounds. An autopsy revealed that Officer Wallace had been hit twice in the head and that one of these shots was fatal. A forensic expert later found the fatal bullet to be consistent with a .380-caliber weapon. The Commonwealth, however, never recovered the murder weapon, or any fingerprints from the spent cartridges found at the scene.

In a videotaped conversation with investigating officers, Royal confessed to the murder of Officer Wallace. Although initially he told investigators that one of the other gunmen, Willie Sanders, used a .380-caliber weapon on the night of the murder, Royal immediately corrected his account and insisted that he alone carried a .380 that night. At the time, experts had not yet identified the caliber of the fatal bullet.

Royal pled guilty to capital murder and use of an illegal firearm. At sentencing, the court found that Royal posed a serious threat of future dangerousness and sentenced him to death. The Virginia Supreme Court affirmed Royal's sentence, see Royal v. Commonwealth, 458 S.E.2d 575 (Va. 1995), and the United States Supreme Court denied his petition for certiorari, see Royal v. Virginia, 516 U.S. 1097 (1996). Royal then filed a state habeas petition, which the Virginia Supreme Court dismissed.

After a federal court stayed his execution, Royal filed a federal habeas petition in April, 1997, which he amended in May, 1997. Royal sought discovery to assist the pursuit of his claims. The district court permitted Royal to obtain certain medical x-rays, but otherwise denied his request for discovery. Ultimately the district court dismissed Royal's petition, finding all claims either procedurally defaulted or without merit. See Royal v. Netherland, 4 F. Supp.2d 540 (E.D. Va. 1998). Later, in an unpublished opinion, the court denied Royal's motion to alter or amend the judgment.

Royal raises five issues on appeal. First, he contends that he is actually innocent of capital murder. Second, Royal maintains that the Commonwealth did not reveal certain exculpatory evidence in a timely manner, in violation of Brady v. Maryland, 373 U.S. 83 (1963). Third, Royal asserts ineffective assistance of state trial counsel based on their failure (a) to pursue a triggerman defense or obtain

3

independent experts, which Royal contends misled him into pleading guilty, and (b) to investigate and present certain mitigating evidence at the sentencing hearing. Fourth, Royal argues that the district court erred in denying him discovery. Finally, Royal contends that the district court erred in failing to allow him a full year within which to file his federal habeas petition.

We address each claim in turn. Because Royal filed his federal habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, we review his claims under that Act. See 28 U.S.C.A. § 2254 (West 1994 and Supp. 1999); Lindh v. Murphy, 521 U.S. 320, 326 (1997); see also Mueller v. Angelone, ___ F.3d ___, 1999 WL 387369, at *3-7 (4th Cir. June 14, 1999).

II.

Royal contends that he is factually innocent of capital murder because, under Virginia law, only the triggerman can be sentenced to death, see Frye v. Commonwealth, 345 S.E.2d 267, 280 (Va. 1986), and new evidence assertedly reveals that Royal did not fire the fatal shot in this case.

Initially, Royal maintains that his actual innocence in and of itself renders his conviction and execution violative of the Eighth and Fourteenth Amendments. Precedent prevents us from granting Royal's habeas writ on this basis alone. Because federal habeas relief exists to correct constitutional defects, not factual errors, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera v. Collins, 506 U.S. 390, 400 (1993).

Although the Herrera Court assumed arguendo that the execution of a defendant who had made a persuasive claim of actual innocence would violate the Constitution and therefore warrant federal habeas relief if no state relief proceedings were available, it stopped short of holding that such a claim exists in every case. Id. at 417. Rather, the Court explained that, when available, state clemency proceedings provide the proper forum to pursue claims of actual innocence based on new facts. Id. at 411-12, 417. Virginia has such an executive clem-

4

ency process available to Royal. See Va. Code Ann. §§ 53.1-229 to -231 (Michie 1998); Va. Const. art. V, § 12. Thus we cannot grant Royal the requested habeas relief based simply on his assertion of actual innocence due to newly discovered evidence. See Herrera, 506 U.S. at 416-17; see also Lucas v. Johnson, 132 F.3d 1069, 1074-76 (5th Cir. 1998).

This, however, does not end our inquiry. In addition to claiming actual innocence as an independent basis for habeas relief, Royal also argues that it renders his execution a "fundamental miscarriage of justice," thus permitting us to review certain defaulted claims on their merits. See Schlup v. Delo, 513 U.S. 298 (1995). Such "a claim of `actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner [can] pass to have his otherwise barred constitutional claim considered on the merits." Herrera, 506 U.S. at 404.

In order to use an actual innocence claim as a procedural gateway to assert an otherwise defaulted claim, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Schlup, 513 U.S. at 327. The Schlup Court adopted a broad definition of "new" evidence to be considered in such cases: a petitioner must offer "new reliable evidence . . . that was not presented at trial." Id. at 324; see also id. at 327-28. The Court further explained that a district court undertaking such an inquiry is not bound by the rules of admissibility and should make its assessment in light of all available evidence, including that considered unavailable or excluded at trial and any evidence that became available only after trial. Id. at 327-28. With these principles in mind, we review Royal's claim of actual innocence to determine whether it entitles him to consideration of his defaulted constitutional claims on their merits.

Royal contends that the following constitutes new evidence tending to show that he is actually innocent of the capital murder of Officer Wallace. Primarily Royal relies on the affidavits of two forensic experts who opine that Officer Wallace was shot through the window of his cruiser, while seated, by someone who was standing. These opinions are based on the downward trajectory of the fatal shot, the presence of small cuts or "dicing" marks on Officer Wallace's face,

5

the absence of gun powder burns around the wounds, and the fact that the cruiser's window was found shattered. Royal also points to four .25-caliber shell casings recovered near the front of Officer Wallace's cruiser and two .380-caliber shell casings recovered near the rear of the car. Finally, Royal cites evidence that one of the .380-caliber shell casings found around the scene did not come from the same gun as the other .380 shells, raising the possibility that more than one person fired a .380 weapon that night.

Royal contends that this new evidence reveals that he could not have been the triggerman in this murder. Specifically, Royal argues that he shot Officer Wallace not while the officer sat in the cruiser, but rather after Officer Wallace opened the car door and stood up. Also, the location of the shell casings is purportedly inconsistent with Royal's confession, in which he claims to have shot at Officer Wallace near the driver's seat rather than toward the rear of the vehicle. Finally, the possibility of more than one .380 gun assertedly indicates that Royal's .380 was not the murder weapon.

This new evidence, however, is also entirely consistent with Royal's guilty plea and confession. In the course of admitting his guilt, Royal repeatedly maintained that he alone carried a .380-caliber weapon. Moreover, as noted by the Virginia Supreme Court, the parties stipulated before the state trial court that "Royal encountered Officer Wallace and fired two shots from a .380 caliber handgun at Officer Wallace while Officer Wallace was seated in his police cruiser." Royal v. Commonwealth, 458 S.E.2d 575, 576 (Va. 1995) (emphasis added). Royal's state habeas petition likewise states: "Royal spontaneously fired two shots from the .380 caliber handgun at Wallace while Wallace was seated in his patrol cruiser." (Emphasis added).

The only evidence in the record before us that supports Royal's new assertion that he shot Officer Wallace after the officer rose from the seat and stood outside the cruiser is an affidavit by his trial attorneys. In the affidavit, defense counsel do recall that Royal told them that Officer Wallace got out of the car before Royal shot him; but this affidavit does not recant the stipulations or Royal's state habeas assertion that Officer Wallace actually "was seated" in the car, nor does it

6

even attempt to explain why those previous assertions should be ignored.

Furthermore, while the location where the shell casings were ultimately found may be inconsistent with a conclusion that Royal was the triggerman, investigators did not remove the casings immediately after the shooting. The record provides uncontroverted evidence that, at a minimum, two of the other gunmen, a neighbor, and the police responding to the incident all moved about at the scene before the recovery of any evidence. Any one of them could have intentionally or inadvertently moved the casings, thus minimizing the importance of exactly where the police ultimately found the shells.

Finally, according to forensic experts, the two .380 bullets found in Officer Wallace's head contained certain unique characteristics, indicating that the same gun likely fired both shots. Although the experts were unable to determine positively whether they came from the same gun, these similarities, coupled with Royal's insistence concerning the caliber of firearm used by each of the gunmen, indicate that Royal alone fired the fatal shot in this case.

In sum, given the undisputed evidence that only Royal carried a .380-caliber weapon and that a .380-caliber bullet inflicted the fatal wound in Officer Wallace's skull, we cannot conclude that "it is more likely than not that no reasonable juror would have convicted [Royal] in the light of the new evidence." Schlup, 513 U.S. at 327. Royal has therefore failed to demonstrate that this is one of the "extremely rare" cases in which a defendant can show that he is actually innocent such that his execution would constitute a fundamental miscarriage of justice entitling him to consideration of his defaulted claims on their merits. See id. at 324, 327.

III.

Turning to the constitutional claims, we first address Royal's contention that the Commonwealth failed to reveal certain exculpatory evidence in a timely manner as required by Brady v. Maryland, 373 U.S. 83 (1963). The Virginia Supreme Court found this claim procedurally barred under Slayton v. Parrigan, 205 S.E.2d 680 (Va. 1974), because Royal could have, but did not, raise the issue on direct

7

appeal. Slayton is a valid state procedural rule, independent of the federal question and adequate to support the judgment. See Smith v. Murray, 477 U.S. 527, 533-39 (1986). We therefore cannot review this claim on its merits unless Royal "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Royal argues that government interference constitutes cause in this instance. See McCleskey v. Zant, 499 U.S. 467, 493-94 (1991). Shortly after Royal submitted his guilty plea, the Commonwealth informed Royal's counsel that a state trooper had planted a .380-caliber gun at the crime scene in order to corroborate a statement made by one of the other gunmen. At the time, the Commonwealth maintained that this was the only "tainted" evidence in the case. Royal did not move to withdraw his plea in response to this revelation, nor did he raise a Brady claim on direct appeal. Then, after Royal filed his direct appeal with the Virginia Supreme Court, but before the court acted, the Commonwealth sent defense counsel another letter indicating that the trooper also planted a .25-caliber cartridge previously characterized as a "legitimate find." The Government also declined Royal's request to reveal certain statements made by the other gunmen involved in the shooting.

Royal contends that the Commonwealth's unexplained delays in revealing that some evidence had been planted and its refusal to turn over statements made by the other gunmen constitute sufficient cause to excuse the default of his Brady claim. Royal's theory is that it was not until he knew that the police officer planted evidence against both him (the .380 gun) and another of the gunmen (the .25 cartridge), that he realized the extent of the weaknesses in the Commonwealth's case, and that it was too late for him to act at that point.

Even if Royal were able to show cause, through government interference or otherwise, he is unable to demonstrate actual prejudice resulting from the Brady violation. Brady holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87 (emphasis added). The suppressed evi-

8

dence, however, even if favorable to Royal, was not"material." "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985).

The prosecution in this case had ample evidence to convict Royal absent any reliance on the planted evidence or information gleaned from statements of the other gunmen. Again, Royal's repeated insistence that he alone used a .380-caliber weapon to shoot Officer Wallace, coupled with the forensic reports indicating that both .380 bullets found in Officer Wallace's head likely came from the same gun, and that one of them killed the officer, convince us that any other evidence the trooper may have planted or any statements that Royal suggests the police may have obtained from the other gunmen were simply not material to Royal's conviction or sentence. Considering the totality of the circumstances, we are confident in the result of the case; we do not find a "reasonable likelihood" that admission of the allegedly exculpatory evidence would have altered the result here. Id. at 682-83. Thus, withholding the evidence could not have caused "actual prejudice" to Royal.

Royal also asserts that investigators somehow used the planted evidence to coerce his confession. The district court correctly found this argument defaulted under Gray v. Netherland, 518 U.S. 152 (1996), because Royal never raised it prior to the federal habeas proceedings. Finally, for the reasons discussed above, Royal failed to demonstrate a fundamental miscarriage of justice based on actual innocence. Accordingly, we cannot review Royal's Brady claim on its merits.

IV.

Royal also makes several ineffective assistance of counsel claims. He contends that he would not have pled guilty if his trial counsel had properly investigated and pursued a triggerman defense or obtained adequate experts. Royal further argues that his counsel's failure to investigate and present certain mitigating evidence at the sentencing hearing denied him effective assistance of counsel. Before the district court, the Commonwealth maintained that the Virginia Supreme

9

Court had denied these claims on their merits, and urged the district court to uphold that denial. Two district judges-- one considering the habeas petition and one considering a motion to alter or amend the judgment -- agreed and denied the claims on their merits.

On appeal, the Commonwealth devotes most of its attention to reiterating its merits arguments; however, it also briefly asserts that these claims are procedurally barred. The Commonwealth contends that a federal habeas court cannot review these claims because the Virginia Supreme Court dismissed them based on Anderson v. Warden, 281 S.E.2d 885 (Va. 1981). Anderson holds that when asserting an ineffective assistance of counsel claim to invalidate a plea, a state habeas petitioner is prohibited (absent an adequate reason) from presenting facts that directly controvert his prior statements concerning voluntariness of the plea or adequacy of trial counsel. Id. at 888. This rule is at its core an evidentiary rule, prohibiting a petitioner from offering evidence impeaching the admissions he made when he pled guilty. See id. at 887-88; see also, e.g. , Garrett v. Murray, 1991 WL 834854, at *1-2 (Va. Cir. Ct. Mar. 14, 1991) (petitioner not allowed to admit new facts that challenge prior statements made in course of plea, citing Anderson; state habeas court therefore finds challenge to voluntariness of plea "without merit"). The Commonwealth asserts that Anderson is also a valid procedural bar, constituting an adequate and independent state ground for the judgment.

However, "[t]he rule that a federal habeas court will not consider a claim that was rejected by a state court on an adequate and independent state-law basis . . . is not a jurisdictional one." Yeatts v. Angelone, 166 F.3d 255, 260-61 (4th Cir. 1999) (citing Trest v. Cain, 522 U.S. 87, 118 S. Ct. 478, 480 (1997)). Procedural default must be pled as an affirmative defense and the Commonwealth is "obligated to raise procedural default as a defense, or [it will] lose the right to assert the defense thereafter." Gray, 518 U.S. at 165-66; see also Trest, 118 S. Ct. at 480; Fisher v. Texas , 169 F.3d 295, 300-02 (5th Cir. 1999). Because in the district court the Commonwealth failed to raise the issue of Royal's asserted Anderson default with respect to these claims (indeed it affirmatively asserted that the claims had been decided on the merits), it has waived its right to pursue the matter on appeal.

10

Nonetheless, even if a state has waived its right to raise the issue, we have held that a federal court, in its discretion, may hold a claim procedurally defaulted. See Yeatts, 166 F.3d at 261; see also Trest, 118 S. Ct. at 480 (leaving open question of whether federal court can consider a procedural default sua sponte). In determining whether to exercise this discretion, Yeatts instructs us to consider whether a state's waiver was intentional or inadvertent, "whether justice requires that the habeas petitioner be afforded with notice and a reasonable opportunity to present briefing and argument opposing dismissal," and whether "interests of comity and judicial efficiency" support this exercise of discretion. Yeatts, 166 F.3d at 262; see also Fisher, 169 F.3d at 300-02.

With these considerations in mind, we decline to exercise our discretion to find these claims procedurally defaulted. See Fisher, 169 F.3d at 300-02. First, unlike Yeatts, it appears that in the district court the Commonwealth intentionally waived this claim. Cf. 166 F.3d at 261-62 (in Yeatts Commonwealth asserted on appeal that it believed that it had made the argument to the district court). Moreover, again unlike Yeatts, id., the parties here have not "thoroughly briefed and argued" this issue (each side devotes only a single conclusory paragraph to it, see Brief of Appellee at 20; Reply Brief at 17), and we believe that in these circumstances justice is better served by not deciding these claims on the basis of procedural default. Most importantly, no comity or judicial efficiency concerns counsel us to decide these claims on procedural default grounds rather than on the basis of their evident lack of merit because here, unlike in Yeatts, the procedural default is not "obvious," 166 F.3d at 262; indeed, the scope of the Anderson rule is far from clear.

Anderson may simply prohibit collateral challenges to a guilty plea, including claims of ineffective assistance of counsel that attack the validity of the plea; such a rule would appear to constitute an adequate and independent state procedural rule like Slayton, and would therefore generally bar us from considering such claims on their merits. See Coleman, 501 U.S. at 750. Less than a year ago, the Commonwealth suggested that this was the scope of the Anderson rule. In that case the Virginia Supreme Court applied Anderson in precisely this manner, finding a petitioner's claims pertaining to counsel's conduct up to and including the court's acceptance of his guilty plea procedur-

11

ally barred by Anderson, but reaching the merits of challenges to counsel's conduct at sentencing and on appeal. See Dubois v. Greene, 149 F.3d 1168, 1998 WL 276282, at *3-5 (4th Cir. 1998) (unpublished). On this understanding of Anderson, we held in an unreported opinion that the Anderson rule constituted a valid procedural bar to our consideration of the petitioner's challenges on their merits. Id.

In the case at hand, however, the Commonwealth conclusorily maintains that Anderson incorporates a broader procedural bar, preventing a petitioner who has pled guilty from asserting any collateral challenge based on ineffective assistance of trial counsel, even a claim pertaining to sentencing. The Virginia Supreme Court here applied Anderson in this more expansive manner, finding that it barred collateral consideration not just of Royal's ineffective assistance claims in connection with the plea but also of the claim relating to his sentence. If the Anderson rule encompasses ineffective assistance of counsel claims that do not challenge the plea but rather only pertain to sentencing, it may well not constitute an adequate and independent state procedural default rule because in Virginia such claims -- unlike challenges to the plea itself -- cannot be raised until the state habeas proceeding. Compare Walker v. Mitchell, 299 S.E.2d 698, 699-700 (Va. 1983) (ineffective assistance of counsel claims cannot be raised prior to state habeas action), with Hall v. Commonwealth, 515 S.E.2d 343, 346-47 (Va. Ct. App. 1999) (defendant can challenge the voluntariness of a plea prior to state habeas -- e.g., in a motion to withdraw the plea -- even if the basis of the challenge is inadequate advice of counsel concerning whether or not to plead). In any event, we are uncertain of the true scope of the Anderson rule and, consequently, whether it can properly be considered an adequate and independent state procedural rule. See Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (rule must be applied regularly and consistently by the state court in order to qualify as an "adequate" state ground); see also Plath v. Moore , 130 F.3d 595, 602 (4th Cir. 1997).

In sum, none of the factors that led us to dismiss the habeas claim in Yeatts on the basis of procedural default supports such a course here. Rather, all of those factors weigh in favor of resolving these patently meritless claims on the substantive grounds to which we now turn.

12

In order to prevail on a claim of ineffective assistance of counsel in connection with a guilty plea, a petitioner must prove that his counsel's performance fell below the well-established standard outlined in Strickland v. Washington, 466 U.S. 668 (1984). See Hill v. Lockhart, 474 U.S. 52, 57-59 (1985). Strickland requires proof of both ineffective representation and actual prejudice -- that is, proof that counsel's performance fell below an objective standard of reasonableness and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687-91, 694. In order to satisfy the prejudice requirement in the context of a challenge to a guilty plea, the defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Royal is unable to meet either prong of the Strickland standard. In making strategic decisions concerning what to investigate or how to proceed at trial, a lawyer may properly rely on the general truthfulness of his client as well as the defendant's particular statements. See Barnes v. Thompson, 58 F.3d 971, 979 (4th Cir. 1995). Given Royal's repeated assertion that he killed Officer Wallace and that only he carried a .380-caliber weapon on the night of the murder, together with the forensic evidence showing the fatal bullet to be consistent with a .380 slug, Royal's first two ineffectiveness claims must fail. We simply cannot conclude, in the face of such strong evidence, that the conduct of Royal's counsel fell outside the wide range of reasonableness afforded attorneys under the Strickland standard when they chose not to pursue a triggerman defense or to obtain independent experts.

Similarly, we have recognized that reliance on evidence of psychological impairments or personal history as mitigating factors in sentencing can be a "double-edged sword." Wright v. Angelone, 151 F.3d 151, 162 (4th Cir. 1998); see also Barnes, 58 F.3d at 980. Thus we must also reject Royal's final ineffectiveness claim; Royal's counsel did not fall below an objective standard of reasonableness in failing to further develop or argue mitigating factors at sentencing.

Furthermore, Royal has not demonstrated prejudice with respect to any of these claims. He has not shown that but for the assertedly ineffective assistance, a reasonable defendant would have insisted on pro-

13

ceeding to trial. See Hill, 474 U.S. at 59. Given the Commonwealth's powerful evidence against Royal -- including his recorded confession and corroborating forensic and ballistic reports-- and the circumstances of the crime, we believe that, even absent counsel's asserted errors, it is likely that a jury would have convicted Royal and the judge would have given him the maximum sentence. We cannot conclude that a reasonable defendant in these circumstances would not have pled guilty. Nor has Royal demonstrated a "reasonable probability" that his sentence would have been more lenient had counsel advanced additional mitigating evidence on his behalf. Strickland, 466 U.S. at 694. Thus, we find all of Royal's ineffective assistance claims without merit.

V.

Royal also argues that the district court erred in denying him discovery under Habeas Rule 6 concerning his Brady claims. In Bracy v. Gramley, 520 U.S. 899 (1997), upon which Royal relies, the Supreme Court explained that a petitioner demonstrates "good cause" for habeas discovery "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." Id. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 299 (1969)). Royal asserts that he has submitted such specific allegations here. Because, as we explained above, Royal procedurally defaulted his Brady claims and has not shown cause and prejudice or fundamental miscarriage of justice permitting its consideration on federal habeas, we cannot agree. The district court therefore did not abuse its discretion in denying the discovery request. See Quesinberry v. Taylor, 162 F.3d 273, 279 (4th Cir. 1998).

VI.

Finally, Royal contends that the district court erred in failing to allow him a full year within which to file his federal habeas petition. See 28 U.S.C.A. § 2244(d)(1); Brown v. Angelone, 150 F.3d 370 (4th Cir. 1998). Any error was harmless. See Brecht v. Abrahamson, 507 U.S. 619 (1993); Tuggle v. Netherland, 79 F.3d 1386, 1392-93 (4th Cir. 1996) (Brecht's harmless error standard applies in federal habeas cases).

14

Assisted by counsel, Royal filed a federal habeas petition within the time period set by the district court. Moreover, after an initial amendment, which the district court allowed, Royal made no further attempt to supplement his petition despite the passage of nearly another year before the district court denied the petition; nor does Royal now assert any new claim that he would like to add to the petition. He has shown no "actual prejudice" stemming from the abbreviated deadline. Brecht, 507 U.S. at 637; see also Williams v. Taylor, ___ F.3d ___, No. 99-1, Slip op. at 22-23 (4th Cir. Aug. 2, 1999). Thus, Royal has not demonstrated that the district court's error exerted a "substantial and injurious effect or influence" on the proceedings. Brecht, 507 U.S. at 637.

VII.

For the foregoing reasons, the district court's denial of habeas relief is

AFFIRMED.

15