PRESENT:  All the Justices

CLIFFORD LEE SIGMON, NO. 1147304

                                        OPINION BY
v.    Record No. 121216      CHIEF JUSTICE CYNTHIA D. KINSER
                                      April 18, 2013
DIRECTOR OF THE
DEPARTMENT OF CORRECTIONS

                UPON A PETITION FOR A WRIT OF HABEAS CORPUS

        In this petition for a writ of habeas corpus filed under

this Court's original jurisdiction, we first hold that a

petition for a writ of habeas corpus and a direct appeal from a

final judgment of conviction can proceed simultaneously in this

Court.  With regard to the claims of ineffective assistance of

counsel raised in the petition, we conclude that the petitioner

failed to prove that, but for his counsel's alleged errors, the

outcome of his trial would have been different.  Therefore, we

will dismiss the petition.

        Clifford Lee Sigmon was convicted in the Circuit Court of

Amherst County of petit larceny, third or subsequent offense, in

violation of Code §§ 18.2-96 and -104; and breaking and entering

with the intent to commit larceny, in violation of Code §§ 18.2-

90 and -91.  In an order dated January 4, 2012, the circuit

court sentenced Sigmon to 12 months in jail, suspended; and 20

years of imprisonment, all but five years suspended,

respectively.

Sigmon, represented by counsel, appealed the circuit court's judgment to the Court of Appeals of Virginia, which denied his appeal on July 12, 2012 by unpublished order.  Sigmon v. Commonwealth, Record No. 0185-12-3 (July 12, 2012).  Sigmon then timely filed a petition for appeal in this Court challenging the judgment of the Court of Appeals.[1]  Sigmon also filed a pro se petition for a writ of habeas corpus in this Court, challenging the legality of his confinement and asserting claims of ineffective assistance of counsel.  The Director of the Department of Corrections (the Director) moved to dismiss Sigmon's petition.

Because Sigmon's petition for a writ of habeas corpus and his direct appeal were pending simultaneously in this Court, we directed Sigmon and the Director to address the following question:[2]

> Is a petition for a writ of habeas corpus
> filed in this Court prior to the conclusion
> of the petitioner's direct appeal of his
> criminal conviction premature, requiring
> dismissal of the petition without prejudice,

---

[1] As he did in the Court of Appeals, Sigmon raises two issues on appeal: (1) whether a blank check is a thing of value under Code § 18.2-96; and (2) whether the evidence was sufficient to sustain his convictions.  See Sigmon v. Commonwealth, Record No. 121321, Pet. for Appeal (filed Aug. 6, 2012).

[2] The Court appointed counsel to represent Sigmon in this habeas corpus proceeding.

or may the petition for writ of habeas
corpus and the direct appeal proceed
simultaneously?

While the precise origin of the writ of habeas corpus is unknown, it is believed to have been in use before the date of the Magna Carta. Rollin C. Hurd, A Treatise on the Right of Personal Liberty, and on the Writ of Habeas Corpus and the Practice Connected with It: With a View of the Law of Extradition of Fugitives 144 (1858). "From its earliest known appearance to the present, habeas corpus has been a judicial order directing a person to have the body of another before a tribunal at a certain time and place." Daniel J. Meador, Habeas Corpus and Magna Carta: Dualism of Power and Liberty 7 (1966). The purpose of a writ of habeas corpus is to "test the validity of detention, and, for this purpose, the law permits a prisoner to mount a collateral attack upon his conviction or sentence." Howard v. Warden of Buckingham Corr. Ctr., 232 Va. 16, 19, 348 S.E.2d 211, 213 (1986); see also Buchanan v. Buchanan, 170 Va. 458, 464, 197 S.E. 426, 429 (1938) ("The primary object of habeas corpus is to determine the legality of the restraint under which a person is held.").

The writ of habeas corpus "was claimed as the birthright of every Englishman, and our ancestors brought it with them as such to this country." United States ex rel. Wheeler v. Williamson,

3

28 F. Cas. 686, 688 (E.D. Pa. 1855). Sometimes referred to as the "most celebrated writ in the English law," Click v. Click, 127 S.E. 194, 195 (W. Va. 1925), it has been preserved in our federal and state constitutions. In the Commonwealth, "the writ of habeas corpus shall not be suspended unless when, in cases of invasion or rebellion, the public safety may require." Va. Const. art. I, § 9 (1971); see also U.S. Const. art. 1, § 9, cl. 2. Pursuant to Code § 8.01-654(A)(1), the "writ of habeas corpus ad subjiciendum shall be granted forthwith by the Supreme Court or any circuit court, to any person who shall apply for the same by petition, showing by affidavits or other evidence probable cause to believe that he is detained without lawful authority."

Habeas corpus "is designed to challenge the civil right of the validity of the petitioner's detention" and is therefore "a civil and not a criminal proceeding." Smyth v. Godwin, 188 Va. 753, 760, 51 S.E.2d 230, 233 (1949); see also Ex parte Tom Tong, 108 U.S. 556, 559-60 (1883) (Habeas corpus "is a new suit brought by [the petitioner] to enforce a civil right, which he claims, as against those who are holding him in custody, under the criminal process."). It is not "a continuation of the criminal prosecution," Smyth, 188 Va. at 760, 51 S.E.2d at 233, and "may not be used as a substitute for an appeal or writ of

4

error."  Brooks v. Peyton, 210 Va. 318, 321, 171 S.E.2d 243, 246 (1969); accord Slayton v. Parrigan, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974).

As both parties acknowledge, none of the statutes addressing habeas corpus, see Code §§ 8.01-654 through -668, expressly or implicitly prohibits a petitioner from seeking habeas corpus relief in this Court prior to completing a direct appeal from a final judgment of conviction.  Those statutes prescribe only a limitation as to the time period in which a petition for a writ of habeas corpus must be filed.  Except in cases in which a death sentence was imposed,

> [a] habeas corpus petition attacking a
> criminal conviction or sentence . . . shall
> be filed within two years from the date of
> final judgment in the trial court or within
> one year from either final disposition of
> the direct appeal in state court or the time
> for filing such appeal has expired,
> whichever is later.

Code § 8.01-654(A)(2).  Before the enactment of Code § 8.01-654(A)(2), which became effective on July 1, 1998,[3] a petitioner could seek habeas corpus relief at any time provided the respondent was not prejudiced in its ability to reply because of the petitioner's delay in filing.  Haas v. Lee, 263 Va. 273, 275, 560 S.E.2d 256, 257 (2002).

---

[3] See 1998 Acts ch. 577; Code § 1-214(A).

5

Relying on our decisions in Bowman v. Washington, 269 Va. 1, 605 S.E.2d 585 (2004), and Davis v. Johnson, 274 Va. 649, 652 S.E.2d 114 (2007), Sigmon argues that in the absence of statutes to the contrary, this Court should exercise its discretion to dismiss without prejudice a habeas corpus petition filed in this Court prior to the disposition of any pending direct appeal challenging the criminal conviction. In Bowman, the petitioner filed a petition for a writ of habeas corpus in circuit court and asserted numerous claims of ineffective assistance of counsel, including a claim that his attorney was ineffective for failing to file a timely petition for appeal challenging his criminal conviction. 269 Va. at 1, 605 S.E.2d at 585. The petitioner asked the circuit court to permit him to file a belated appeal to the Court of Appeals of Virginia and to dismiss his remaining claims without prejudice. Id. The circuit court granted the requested relief as to the belated appeal but dismissed the other claims with prejudice. Id.

Prior to the amendment of Code § 8.01-654(B)(2) in 2005, see 2005 Acts ch. 836, a petitioner was barred from asserting in a subsequent petition for a writ of habeas corpus new claims based on facts of which the petitioner had knowledge at the time

6

of filing the previous petition.[4]  A petitioner could, however, reassert claims previously dismissed without prejudice.  Id. at 1-2, 605 S.E.2d at 585.  Because the petitioner in Bowman had requested that his remaining habeas claims be dismissed without prejudice so as to preserve them while he pursued his direct appeal, we concluded that the circuit court abused its discretion by dismissing those remaining claims with prejudice. Id.

Similarly, the circuit court in Davis granted the petitioner's habeas corpus claim seeking a belated appeal from a final judgment of conviction and also adjudicated the merits of his other claims of ineffective assistance of counsel, dismissing them with prejudice.  274 Va. at 652, 652 S.E.2d at 115.  On appeal, however, we found no abuse of discretion by the circuit court.  Id. at 654, 652 S.E.2d at 117.  Noting the 2005 amendment to Code § 8.01-654(B)(2), we explained that our decision in Bowman "did not suggest that a circuit court must[,] in every case[,] dismiss without prejudice all additional habeas corpus claims accompanying a successful request for a belated appeal."  Id.

---

[4] Pursuant to the 2005 amendment to Code § 8.01-654(B)(2), a petitioner is no longer precluded from asserting new claims in a subsequent petition for a writ of habeas corpus when the sole claim in the first petition was a denial of the right of appeal from a final judgment of conviction.  See 2005 Acts ch. 836.

> Instead, the discretionary nature of the circuit court's authority permits a circuit court to evaluate a petitioner's additional claims. If the circuit court is able to determine from the record that these claims are insufficient as a matter of law, or are procedurally barred as a matter of law, the circuit court retains the discretionary authority to dismiss those deficient claims with prejudice. If, however, the additional claims cannot be resolved as a matter of law on the face of the record, the circuit court should dismiss those claims without prejudice to enable a petitioner to reassert the same claims in a later petition after his belated appeal is concluded.

Id.

The decisions in Bowman and Davis signify that it lies within the sound discretion of the court whether to adjudicate all habeas corpus claims when ruling on a claim for a belated appeal. However, contrary to Sigmon's argument, those cases are not dispositive of the question we posed to the parties in this case: whether a petition for a writ of habeas corpus and a direct appeal can proceed simultaneously in this Court. We now answer that question affirmatively.

The writ of habeas corpus has always been regarded "'as a palladium of liberty'" and recognized as one of "'the greatest and most effective remedies known to the law.'" Click, 127 S.E. at 195 (citations omitted). Moreover, Code § 8.01-654(A)(1) commands that when a petitioner shows that he or she is detained without lawful authority, the "writ of habeas corpus ad

8

subjiciendum shall be granted forthwith." (Emphasis added.) We find no justification to dismiss without prejudice a petition for a writ of habeas corpus filed in this Court merely because a direct appeal is also pending either in the Court of Appeals or in this Court. Indeed, such a procedure would ignore the fact that claims of ineffective assistance of counsel are not reviewable on direct appeal and thus can be raised only in a habeas corpus proceeding. See Johnson v. Commonwealth, 259 Va. 654, 675, 529 S.E.2d 769, 781 (2000); Roach v. Commonwealth, 251 Va. 324, 335 n.4, 468 S.E.2d 98, 105 n.4 (1996); Walker v. Commonwealth, 224 Va. 568, 570-71, 299 S.E.2d 698, 699-700 (1983). A petitioner with a meritorious claim of ineffective assistance of counsel should not be forced either to forego all direct appeal remedies in order to seek habeas corpus relief immediately after a criminal conviction, or to wait until the completion of any direct appeal remedies before pursuing the habeas corpus claim. Thus, Sigmon's petition for a writ of habeas corpus can proceed simultaneously with his direct appeal in this Court. Cf. Walker, 224 Va. at 570, 299 S.E.2d at 699 (direct appeal of conviction and appeal from denial of a habeas corpus petition both pending before the Court simultaneously).

We turn now to the merits of his habeas corpus claims. Before addressing them, we will summarize the pertinent evidence

9

presented at Sigmon's trial for petit larceny and breaking and entering with the intent to commit larceny. The victim, William L. Higginbotham, testified that he and Sigmon are cousins and that although they have known each other since childhood, he had not seen Sigmon for at least 20 years. Higginbotham related that on the day in question, May 29, 2011, Sigmon came to his house two times. According to Higginbotham, he felt uncomfortable during the first encounter because Sigmon asked him for money. Higginbotham did not give Sigmon a definite answer but merely told Sigmon he would "try to see what [he] could do."

Higginbotham testified that Sigmon returned to his house about 30 to 45 minutes later. Higginbotham decided to "try to give the impression that no one was home," so he concealed himself in a closet and did not respond to Sigmon's knocking on the door. Higginbotham observed Sigmon enter the house uninvited, rummage through the drawers of a computer desk, take a blank check from a checkbook lying on the desk, and then leave. Higginbotham later placed a "hold" on the check, which was never cashed.

Sigmon testified at trial and admitted that he went to Higginbotham's house twice on the day in question. He also admitted that he entered the house the second time uninvited,

10

after receiving no response to his knocking and calling for Higginbotham. He further acknowledged that he took the blank check. Sigmon claimed, however, that he took the check solely to get Higginbotham's telephone number so he would not need to leave Higginbotham a note. Sigmon also testified that he tore off the part of the check containing the telephone number and threw the remaining portion away. Sigmon admitted that he had been released from prison in December 2010 and had been convicted of a "bunch" of felonies.

In his habeas corpus petition, Sigmon alleges that he was denied effective assistance of counsel on the following grounds: (1) that counsel failed to meet with him until 30 minutes prior to trial and to discuss trial strategy or possible defenses to the charges; (2) that counsel failed to investigate the charges; (3) that counsel failed to prepare for trial and to interview and/or subpoena witnesses, in particular John Gilbert Huffman and Peggy Sue Vaughan, petitioner's fiancée; (4) that counsel failed to discuss with petitioner whether he should request a trial by jury; (5) that counsel failed to present exculpatory evidence at trial; (6) that counsel failed to request a continuance of the trial because counsel was not prepared to proceed; and (7) that counsel incorrectly informed the trial

11

court that petitioner wished to change his plea from not guilty to guilty.

In this collateral attack on his convictions, Sigmon has the burden to prove by a preponderance of the evidence his claims of ineffective assistance of counsel. Jerman v. Dir., 267 Va. 432, 438, 593 S.E.2d 255, 258 (2004); Green v. Young, 264 Va. 604, 608, 571 S.E.2d 135, 138 (2002). To prevail on those claims, he must satisfy both parts of a two-part test established in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, Sigmon must show that his counsel's "performance was deficient," which means "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, he must prove that counsel's "deficient performance prejudiced the defense," that is to say "counsel's errors were so serious as to deprive the defendant of a fair trial." Id.

As explained in Strickland, a court is not required to determine "whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697. Instead, a court can proceed directly to the prejudice prong of the two-part test "[i]f it is easier to dispose of an ineffectiveness claim on the

12

ground of lack of sufficient prejudice." Id. We will do so in this case.

Upon reviewing the record, including the transcript of Sigmon's trial and his counsel's affidavit, the Court concludes Sigmon has not demonstrated that "there is a reasonable probability that, but for counsel's [alleged] errors, the result of the proceeding would have been different." Id. at 694. Sigmon failed to provide affidavits or other evidence to show what additional trial strategies and defenses were available if counsel had met with him more often and engaged in additional trial preparation; what additional investigation of the charges would have revealed; what testimony John Gilbert Huffman, Peggy Sue Vaughan and any other witnesses would have provided if counsel had interviewed and subpoenaed them to testify at trial; what factors informed his decision to have a bench trial and what additional information from his counsel would have prompted him to request a jury trial; what exculpatory evidence counsel should have introduced at trial; what further evidence and/or defenses could have been developed if counsel had requested a continuance of the trial; and how any miscommunication about whether he wished to change his plea affected the trial court's finding of guilt on the charges. As the Director states in his motion to dismiss, Sigmon's claims are facially lacking under

13

the prejudice prong of the two-part test because Sigmon fails even to assert, much less demonstrate, that but for counsel's alleged errors, the result of his trial would have been different.

Furthermore, Higginbotham's account of Sigmon's entering his house the second time without permission, taking the blank check out of the checkbook, and leaving with it is uncontradicted. Sigmon admitted to these actions but claimed he took the check merely to get Higginbotham's telephone number. His counsel argued that the blank check had no value until it was signed and endorsed, that there was no evidence that Sigmon used the check in any manner, and that he lacked the intent to steal anything of value. Sigmon has identified no alternative defense that counsel should have pursued at trial.

In sum, Sigmon failed to satisfy the prejudice prong of the two-part <u>Stickland</u> test. Therefore, we will dismiss Sigmon's petition for a writ of habeas corpus.

<u>Dismissed</u>.

14