**Bobby E. HAZEL Petitioner,**

v.

**UNITED STATES, Respondent.**

Nos. CIV.A.97–633–AM,
CRIM.A.93–62–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 11, 2004.

United States, Pro se.

## MEMORANDUM OPINION

ELLIS, District Judge.

This *pro se* successive motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 presents, *inter alia,* the following questions:

(i) whether a claim of actual innocence may be raised by a petitioner pursuant to § 2255 as a freestanding claim, or must this claim be accompanied by an independent constitutional claim;

(ii) whether a district court reviewing a certified claim in a successive petition may also review claims that were not presented for certification; and

(iii) whether a petitioner may amend his successive § 2255 petition to include additional claims where it appears that such amendments may be futile.

Oral argument in this matter is dispensed with because the facts and legal contentions are adequately set forth in the existing record and oral argument would not aid the decisional process.[1]

## I.

On February 11, 1993, a grand jury returned a three-count indictment against defendant Bobby Hazel and co-defendant Homer Richards. Count one charged defendant and Richards with the murder of Gregory Ford, in violation of 18 U.S.C. §§ 1111 and 2, on June 16, 1992 at the Lorton Correctional Facility in Occoquan, Virginia, where Hazel, Richards, and Ford were inmates. Counts two and three charged Hazel and Richards respectively, with possession of a dangerous weapon by a prisoner, in this case a shank, in violation of 18 U.S.C. § 13, assimilating Va.Code § 53.1–203(4).

Defendant and Richards were tried together and, after a two-day trial in May 1993, a jury found defendant guilty of first degree murder and possession of a dangerous weapon. The jury also convicted Richards of possession of a dangerous weapon. In addition, Richards was found guilty of second degree murder, a lesser-included offense of the first degree murder charge.

At trial, the government presented testimony from thirteen witnesses, including key testimony from four inmates present at the time of the murder—Travis Cameron, Marshall Hollingsworth, David Basknight, and Thomas Dinsmore—all of whom implicated defendant and Richards in the murder. Defendant and Richards offered the testimony of twelve witnesses, including three inmates who offered alibi evidence and one inmate who testified that Cameron had told him that he, Cameron, intended to lie at trial regarding defendant's and Richards' guilt. On July 16, 1993, after denial of defendant's motion for judgment of acquittal or, in the alternative, a new trial, defendant was sentenced to life imprisonment. On July 30, 1993, Richards was sentenced to 235 months impris-

---

1. *See United States v. Yearwood,* 863 F.2d 6, 7 (4th Cir.1988) (recognizing that "[a] hearing is not required... on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief").

onment. Thereafter, on July 23, 1993, defendant filed a timely Notice of Appeal. On November 26, 1993 and March 18, 1994, defendant filed a second and third motion for a new trial based on newly discovered evidence. Both motions were denied on the ground that the newly discovered evidence provided only additional impeachment evidence and would not likely have resulted in an acquittal had it been presented at trial. *See United States v. Hazel*, Criminal Action No. 93–62–A (E.D.Va. December 17, 1993) (Order); *United States v. Hazel*, Criminal Action No. 93–62–A (E.D.Va. March 21, 1994) (Order). Defendant also filed timely Notices of Appeal from both denials. These appeals were consolidated with Richards' appeals and the Fourth Circuit ruled on August 16, 1994 that the newly discovered evidence "is merely additional impeachment of the testimony of Basknight, Cameron, and Hollingsworth," and thus did not compel a new trial. *See United States v. Hazel*, 33 F.3d 53, 1994 WL 440407 (4th Cir.1994) (per curiam), *cert. denied*, 514 U.S. 1015, 115 S.Ct. 1356, 131 L.Ed.2d 214 (1995).

On April 18, 1997, defendant filed a motion to correct, vacate, or set aside his sentence pursuant to 28 U.S.C. § 2255 on the ground that he received ineffective assistance of counsel. Specifically, defendant argued that his trial counsel provided ineffective assistance because counsel (i) failed to investigate adequately defendant's case, (ii) failed to call crucial witnesses, as a consequence of the inadequate investigation, (iii) failed to call witnesses to impeach important government witnesses and (iv) failed to impeach the government's witnesses by cross-examination. Defendant included affidavits from nine witnesses who did not testify at trial but said they would have offered testimony corroborating defendant's alibi or impeaching the government's witnesses had they been asked to testify. On July 14, 1997, defen-

dant's § 2255 motion was denied on the grounds that defendant failed to show either (1) deficient performance or (2) prejudice, as required by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hazel v. United States*, Criminal No. 93–62–A (E.D.Va. July 14, 1997) (Memorandum Opinion). The Fourth Circuit affirmed the district court's denial of defendant's § 2255 motion on appeal on December 11, 1997. *See In re Hazel*, Criminal Action No. 93–62–A, Civil Action No. 97–633–AM (4th Cir. December 11, 1997) (Memorandum Opinion). On July 16, 1998 and September 4, 1998, the Fourth Circuit denied defendant's motions for authorization to file a successive § 2255 motion pursuant to 28 U.S.C. § 2244. *See In re Hazel*, Criminal Action No. 93–62–A, Civil Action No. 97–633–AM (4th Cir. July 16, 1998) (Order); *In re Hazel*, Criminal Action No. 93–62–A, Civil Action No. 97–633–AM (4th Cir. September 4, 1998) (Order).

On March 23, 1999, defendant filed a motion to reopen judgment under "extraordinary circumstances" which was denied on March 25, 1999. *See United States v. Hazel*, Criminal Action No. 93–62–A (E.D.Va. March 25, 1999) (Order) (finding frivolous defendant's contention that the government engaged in ex parte communications with his trial counsel). On May 9, 2000, defendant filed a second motion to reopen. This time the court construed defendant's motion as a second petition under § 2255 and denied the petition on the ground that defendant had failed to obtain the required certification to file a successive petition from the Fourth Circuit. *See United States v. Hazel*, Criminal Action No. 93–62–A (E.D.Va. May 16, 2000) (Order); *see also* 28 U.S.C. § 2255 ("A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals. . . ."). On November 29, 2000, the Fourth Circuit again denied defendant's

motion for authorization to file a successive § 2255 petition pursuant to 28 U.S.C. § 2244. *See In re Hazel,* Criminal Action No. 93–62–A, Civil Action No. 97–633–AM (4th Cir. November 29, 2000) (Order)

On January 17, 2003, defendant filed yet another motion at the Fourth Circuit pursuant to § 2244 seeking authorization to submit a successive § 2255 petition, this time based on newly discovered evidence, namely the testimony of Norman Jenkins, a Lorton inmate, who allegedly witnessed Ford's murder. In support of this motion, defendant submitted Jenkins' affidavit in which Jenkins stated that he witnessed an argument between Ford, Basknight, Cameron, and Jeffrey Wells, another inmate, on June 16, 1992, that ultimately resulted in Cameron's murder of Ford. Jenkins stated that he remained silent regarding his knowledge of the murder for over a decade until he met defendant while the two were inmates at a federal prison in Florence, Colorado because he had been advised to do so by a correctional officer, Corporal Marie Williamson, with whom Jenkins was having a romantic relationship at the time of the murder. On February 20, 2003, the Fourth Circuit granted defendant's motion and certified his successive petition.

As a consequence, defendant filed here a motion to vacate, set aside, or correct his sentence pursuant to § 2255 on the grounds that Jenkins' testimony, if offered at trial, would have resulted in defendant's acquittal. In his reply to the government's opposition to the motion, defendant also argues that relief should be granted because the government failed to disclose favorable evidence as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, thus denying him a fair trial. On November 24, 2003, defendant brought a motion for leave to amend his § 2255 petition to include an additional claim of ineffective assistance of counsel. Specifically, it appears that defendant alleges that trial counsel (i) failed to object to the government's reliance on theories during trial that were broader than what was charged in the indictment and (ii) failed to object to false testimony to the grand jury. Furthermore, in January 2004, defendant brought a motion for discovery and a motion for an evidentiary hearing. All of these motions are addressed.

## II.

The passage of the Anti-terrorism and Effective Death Penalty Act ("AEDPA")[2] in 1996 dramatically changed the landscape of § 2255 motions. Among the most important of the changes were the significant restrictions placed on second or successive petitions brought by federal and state prisoners. In particular, before a federal prisoner may bring a successive petition in the district court in which he was sentenced, he must obtain certification "by a panel of the appropriate court of appeals...." 28 U.S.C. § 2255; *see also Pratt v. United States,* 129 F.3d 54, 56–57 (1st Cir.1997); Randy Hertz & James S. Liebman, Federal Habeas Corpus Practice and Procedure 1275 (4th ed.2001).[3] The AEDPA directs courts of appeals to certify a successive petition only if the petition:

**2.** 28 U.S.C. § 2241 *et seq.*

**3.** Courts interchangeably use the terms "certification" and "authorization" to describe the procedure in which a petitioner obtains approval of the court of appeals. *Compare United States v. Grandison,* 85 Fed.Appx. 320, 321 (4th Cir.2003) (authorization) *with United States v. Barrett,* 178 F.3d 34, 40 (1st Cir.

1999) (certification). This is so because in setting the procedure a petitioner must follow to obtain approval to file a successive petition Congress used the term "certification" in § 2255, with respect to federal habeas petitions, and "authorization" in § 2244, with respect to habeas petitions brought by state prisoners under § 2254.

contain[s]—

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255.[4]

Because the petition at bar is not defendant's first attempt to obtain relief pursuant to § 2255, it is quite clearly categorized properly as a successive petition for which circuit certification is a prerequisite. Thus, as required by AEDPA, defendant sought and received certification from the Fourth Circuit of his actual innocence claim prior to bringing his successive petition. *See In re Hazel,* Criminal Action No. 03–109, 93–62–A (4th Cir. February 20, 2003) (Order) ("The Court grants the motion on the grounds of newly discovered

evidence."). Thus, there is no dispute that his petition on that claim may proceed here.[5]

■ The remaining question in this regard is whether it is proper to address here the two additional claims defendant asserts in his petition—the *Brady* claim and the ineffective assistance of counsel claim—given the absence of circuit certification of these claims. It appears that the absence of certification of these claims is not bar a to review of these claims. First, AEDPA itself includes no bar to district court review of claims that did not appear in a request for certification that was granted. And moreover, controlling caselaw makes clear that once the court of appeals finds that the application contains "any claim" that satisfies § 2255, "the court [of appeals] should authorize the prisoner to file the entire application in the district court, even if some of the claims in the application do not satisfy the applicable standards." *Winestock,* 340 F.3d at 205 (citing *Nevius v. McDaniel,* 104 F.3d 1120, 1121 (9th Cir.1996)).[6] Therefore, de-

---

**4.** A state prisoner seeking successive habeas review under 28 U.S.C. § 2254 must follow similar procedures. *See* 28 U.S.C. § 2244(b)(3). Yet, while § 2255 states that the court of appeals must find that the petition "contains" either (i) "newly discovered evidence" or (ii) "a new rule of constitutional law, made retroactive," § 2244 states that the court of appeals may authorize a successive petition "only if it determines that the application makes a prima facie showing that the application" satisfies these requirements. *See* 28 U.S.C. § 2244(b)(3)(C). While some courts have held that the standards set out in § 2244 apply on a § 2255 motion, the Fourth Circuit has not yet resolved this issue. *See United States v. Winestock,* 340 F.3d 200, 204–05 (4th Cir.2003) (stating that the Court need not decide whether § 2244(b)(1) applies on a § 2255 motion).

**5.** In the absence of certification or authorization, a district court must either transfer to the circuit court or dismiss for want of subject matter jurisdiction. *See Barrett,* 178 F.3d at

41 ("[A] district court, faced with an unapproved second or successive habeas petition, must either dismiss it or transfer it to the appropriate court of appeals."); *see also Winestock,* 340 F.3d at 205 ("In the absence of pre-filing authorization, the district court lacks jurisdiction to consider an application containing abusive or repetitive claims.") (citing *Evans v. Smith,* 220 F.3d 306, 325 (4th Cir.2000)); *Grandison,* 85 Fed.Appx. at 321 (stating that if the petitioner failed to obtain authorization from the court of appeals "the district court lacks jurisdiction to hear the claims").

**6.** Worth noting, however, is that it is arguably anomalous that a law designed to shield the federal district courts from the flood of successive habeas petitions, has been interpreted in *Winestock,* 340 F.3d 200, to permit a petitioner who wins certification on only one ground to use that certification as a means to piggyback in for review a host of other uncertified and unscrutinized claims. *See generally*

fendant may raise the *Brady* and *Strickland* claims here even though he did not receive express certification from the Fourth Circuit to do so. Thus, assuming *arguendo* that defendant may amend his initial successive § 2255 motion to add claims under *Brady* and *Strickland*,[7] defendant may raise all three claims here.

## III.

Defendant's first § 2255 claim is that newly discovered evidence establishes his actual innocence and thus requires that he receive a new trial. Specifically, defendant argues that Jenkins' affidavit makes clear that Cameron, not defendant or Richards, murdered Ford. And, defendant further contends that he could not have raised this claim earlier because he did not learn of this evidence until nearly ten years after the murder when he met Jenkins in a federal Colorado prison.

In *Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993), the Supreme Court stated that habeas petitioners' actual innocence claims under § 2254

"have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state proceedings." *Id.* at 400, 113 S.Ct. 853; *see generally Schlup v. Delo,* 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (stating that newly discovered evidence used to support an actual innocence claim may include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"). That is, as a general rule, a claim of actual innocence, standing alone, is not a sufficient ground for habeas corpus relief; instead, actual innocence claims must be accompanied by a constitutional violation claim to warrant habeas relief. *See id.; see also* Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 91. Nonetheless, the Supreme Court left open the possibility that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would ... warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417, 113 S.Ct. 853; *see also* Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 91.[8]

---

*Alexander v. United States,* 121 F.3d 312, 315 (7th Cir.1997) ("What should a court do with a prisoner who refuses to take no for an answer, and files over and over again? Judicial resources are limited and should be used to provide initial hearings rather than being diverted to repetitious claims. The AEDPA is designed to bring successive petitions to a halt.").

7. *See infra* Parts IV and V.

8. Yet, while the Supreme Court recognized the possibility of a freestanding claim of actual innocence in only a small subset of habeas cases, it did not otherwise "cast[] a blind eye toward innocence." *See Herrera,* 506 U.S. at 404, 113 S.Ct. 853. Instead, the Supreme Court made clear that a petitioner can always raise a claim of actual innocence as a "gateway" to avoid the procedural bar to successive review. *See Schlup,* 513 U.S. at 316, 115 S.Ct. 851; *Herrera,* 506 U.S. at 404, 113 S.Ct. 853 ("But this body of our habeas jurisprudence makes clear that a claim of 'actual

innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.") (citing *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992)). Prior to the passage of the AEDPA in 1996, a petitioner seeking successive review had to show either (i) "cause for failing to raise [the claim in the earlier petition] and prejudice therefrom," or (ii) that "a fundamental miscarriage of justice would result from a failure to entertain the claim." *See McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). If a petitioner could "present[] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial," then a court's failure to entertain a successive petition is a "fundamental miscarriage of justice," and "the petitioner should be allowed to pass through the gateway." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851. The AEDPA superseded these gateway requirements with new statutory requirements set forth in §§ 2244 and 2255.

After *Herrera,* lower courts have reached different conclusions regarding whether a habeas petitioner may raise actual innocence as a freestanding claim. While several circuit courts have held that a petitioner may not pursue a claim of actual innocence unless the petitioner also raises a claim of an independent constitutional violation occurring in the underlying proceedings,[9] others have found that freestanding actual innocence claims may be cognizable.[10] Fourth Circuit authority on this issue is inconclusive and conflicting. In *Royal v. Taylor,* 188 F.3d 239, 243 (4th Cir.1999), the Fourth Circuit refused to "grant Royal the requested habeas relief based simply on his assertion of actual innocence due to newly discovered evi-

dence" on the ground that such freestanding claims are not cognizable and must be accompanied by a claim of an independent constitutional violation. *Id.* at 243. Yet, in *Hunt v. McDade,* 2000 WL 219755, at *2, 2000 U.S.App. LEXIS 2849, at *6–7 (4th Cir.2000), a Fourth Circuit panel entertained a freestanding claim of actual innocence without discussing *Royal.* *Id.*[11] In this instance, defendant's actual innocence claim is freestanding (i) because his *Brady* and *Strickland* claims do not survive on other grounds, *see infra,* and (ii) because defendant does not allege evidentiary insufficiency as an independent constitutional violation.[12] Nonetheless, it is unnecessary here to reach and decide whether defendant may pursue a freestanding claim of actual innocence in this

Also worth noting is that although *Herrera* involved a § 2254 habeas claim, this authority has been applied on § 2255 motions, as well. *See, e.g., Guinan v. United States,* 6 F.3d 468, 470–71 (7th Cir.1993); *Ruiz v. United States,* 221 F.Supp.2d 66, 73 (D.Mass.2002); *United States v. Lampton,* 2001 WL 263094, at *4, 2001 U.S. Dist. LEXIS 3043, at *15 (E.D.La. 2001).

**9.** *See Sellers v. Ward,* 135 F.3d 1333, 1338–39 (10th Cir.1998); *Lucas v. Johnson,* 132 F.3d 1069, 1075 (5th Cir.1998); *Meadows v. Delo,* 99 F.3d 280, 283 (8th Cir.1996); *Jacobs v. Scott,* 31 F.3d 1319, 1324 (5th Cir.1994).

**10.** *See Whitfield v. Bowersox,* 324 F.3d 1009, 1020 (8th Cir.2003) (finding a *Herrera*-type claim cognizable); *Conley v. United States,* 323 F.3d 7, 14 n. 6 (1st Cir.2003) ("It is not clear whether a habeas claim could be based on new evidence proving actual innocence...."); *Milone v. Camp,* 22 F.3d 693, 699–700 (7th Cir.1994) (leaving open the possibility that a petitioner may raise a freestanding claim of actual innocence); *Lyon v. Senkowski,* 109 F.Supp.2d 125, 142 (W.D.N.Y. 2000) ("Herrera did not rule on whether a 'freestanding' claim of actual innocence could ever be a basis for habeas relief. However, it noted that 'the threshold showing for such an assumed right would necessarily be extraordinarily high.' "); *Johnson v. Hofbauer,* 159 F.Supp.2d 582, 606 (E.D.Mich.2001) (finding

a freestanding actual innocence claim cognizable).

**11.** *See also Wilson v. Greene,* 155 F.3d 396, 404 (4th Cir.1998) ("Claims of actual innocence, whether presented as freestanding ones, or merely as gateways to excuse a procedural default, should not be granted casually."); *O'Dell v. Netherland,* 95 F.3d 1214, 1246 n. 25 (4th Cir.1996) (assumes *arguendo* that a freestanding claim of actual innocence is proper). *Also compare Cherrix v. Braxton,* 131 F.Supp.2d 756, 767 (E.D.Va.2001) ("Moreover, such newly discovered [DNA] evidence would illuminate Cherrix's federal habeas claims that his conviction is unconstitutional.") *with Snyder v. City of Alexandria, et al.,* 870 F.Supp. 672, 685 n. 34 (E.D.Va.1994) ("Snyder might not be able to obtain habeas relief solely by claiming that newly discovered evidence, such as DNA test results, proved his innocence....").

**12.** *See Jackson v. Virginia,* 443 U.S. 307, 317, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("Under *Winship,* which established proof beyond a reasonable doubt as an essential of Fourteenth Amendment due process, it follows that when such a conviction occurs in a state trial it cannot constitutionally stand.") (citing *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)).

circuit because, assuming *arguendo* that he may, his claim nonetheless fails.

■ Before proceeding to an analysis of defendant's actual innocence claim, it is necessary to address the threshold question regarding the standard to be applied to such claims. While the Supreme Court in *Herrera* did not explicitly prescribe the standard courts must apply in assessing "freestanding claims of actual innocence," it did make clear that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Id.* at 401, 417, 113 S.Ct. 853. And further in this regard, the *Herrera* opinion suggests, as Justice White makes explicit in his concurrence, that a petitioner asserting actual innocence on habeas review must meet the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), namely that "[no] rational trier of fact could [find] guilt beyond a reasonable doubt," had it been given access to the newly discovered evidence. *Id.* at 401–02, 429, 113 S.Ct. 853 (White, J., concurring) (internal quotations omitted). It appears that the Fourth Circuit has adopted this standard in analyzing a petitioner's freestanding claim that DNA evidence established his actual innocence.

*See Hunt,* 2000 WL 219755, at *2, 2000 U.S.App. LEXIS 2849, at *7.[13]

■ Defendant's actual innocence claim does not meet this rigorous standard because it is quite clear that a rational jury could find defendant guilty of the murder beyond a reasonable doubt even had it been provided Jenkins' testimony. This conclusion follows from a comparison of the recent Jenkins' affidavit with the trial record's ample evidence of defendant's guilt. Thus, Jenkins' affidavit directly conflicts with the testimony of the four key witnesses at trial—Cameron, Hollingsworth, Basknight, and Dinsmore—all of whom offered testimony regarding the circumstances surrounding Ford's murder. Specifically, Cameron testified that he saw defendant and Richards repeatedly stab Ford in both the front and back of his body. *See* Tr. Vol. I pp. 125–27. Hollingsworth testified (i) that he, too, while standing in a nearby stairwell, observed defendant and Richards make aggressive hand movements towards Ford and (ii) that he saw defendant and Richards together shortly after the murder at which time they handed a knife to another inmate. *See* Tr. Vol. I pp. 186–89. Basknight testified that he overheard an argument among

---

**13.** It is also worth noting that this standard is essentially similar to that prescribed in § 2244 for successive petitions. Specifically, § 2244 provides that a new claim presented in a successive petition "shall be dismissed unless—

 (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and
 (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."
28 U.S.C. § 2244(b)(2)(B). While many courts have incorporated this provision, which explicitly applies only on § 2254 peti-

tions, to § 2255 motions, the Fourth Circuit has not decided this issue. *See, e.g., Winestock,* 340 F.3d at 205; *Taylor v. Gilkey,* 314 F.3d 832, 836 (7th Cir.2002) ("Although § 2244 refers to § 2254 rather than § 2255, we have held that the cross-reference to § 2244 in § 2255 P8 means that it is equally applicable to § 2255 motions."); *Reyes–Requena v. United States,* 243 F.3d 893, 897 (5th Cir.2001) ("We find that § 2255 incorporates both § 2244(b)(3)(C) and § 2244(b)(4)."); *United States v. Villa–Gonzalez,* 208 F.3d 1160, 1165 (9th Cir.2000) (applying § 2244(b) on a § 2255 motion). It is not, however, necessary to reach this issue here because, while the language Congress used may have been different, there is no practical difference between the standards set out in § 2244 and § 2255.

several inmates and then saw Ford's bleeding body fall to the ground while he, Basknight, was hiding behind a bed in his nearby cell. *See* Tr. Vol. I pp. 76–79. Finally, Dinsmore testified (i) that defendant and Richards asked him, Dinsmore, to hurt Ford and (ii) that Richards told him that Ford owed Richards money. *See* Tr. Vol. I pp. 58–59. In addition to these four key witnesses, the government also offered the testimony of nine other witnesses.

When comparing this record evidence of guilt to Jenkins' exculpatory affidavit, it is important to note that a rational jury might well not credit the affidavit. Jenkins, of course, was a convicted felon serving a sentence in a maximum security federal prison at the time of the murder such that a jury could reasonably have rejected his testimony, even had he testified at trial. Furthermore, the nearly ten-year delay before Jenkins came forward and the reason he advanced for not coming forward earlier—his relationship with Corporal Williamson—also points to the affidavit's unreliability. Therefore, there is no doubt that this newly discovered evidence, in the form of an affidavit by a federal inmate exonerating defendant ten years after the fact, does not meet the "extraordinarily high" [14] standard for freestanding claims of actual innocence and does not compel the conclusion that "no rational trier of fact could find proof of guilt beyond a reasonable doubt." *Herrera,* 506 U.S. at 429, 113 S.Ct. 853 (White, J., concurring) (citing *Jackson,* 443 U.S. at 318–19, 99 S.Ct. 2781).

This result finds firm support in the facts and holding of *Herrera.* There, the Supreme Court held that four affidavits presented ten years after petitioner's conviction which implicated petitioner's deceased brother in the murder for which petitioner was convicted did not "make a persuasive showing of actual innocence." *Id.* at 427, 113 S.Ct. 853. The Supreme Court based its conclusion to a large extent on the perceived unreliability of the affidavits exonerating the petitioner and filed years after the murder conviction:

> Affidavits like these are not uncommon, especially in capital cases. They are an unfortunate although understandable occurrence. It seems that, when a prisoner's life is at stake, he often can find someone new to vouch for him. Experience has shown, however, that such affidavits are to be treated with a fair degree of skepticism.

*Id.* at 423, 113 S.Ct. 853. Similarly, in *Hunt,* the Fourth Circuit found that "PCR/DNA testing of a fluid sample taken from [the victim's] body [that] indicates that [defendant] did not contribute to the sperm found in the sample" did not meet the "stringent evidentiary standard" to warrant habeas relief because the new evidence was not "sufficiently exculpatory." *Hunt,* 2000 WL 219755, at *2–3, 2000 U.S.App. LEXIS 2849, at *6–8. These cases and others make clear that the requisite standard to succeed on a freestanding claim of actual innocence, should one exist, is extraordinarily difficult to meet,[15] particularly with regard to new evidence in the form of affidavits, and perhaps even with regard to DNA evidence.[16] To con-

---

14. *Herrera,* 506 U.S. at 417, 113 S.Ct. 853.

15. *See Whitfield,* 324 F.3d at 1020 ("To prevail on a *Herrera*-type claim, the petitioner is held to an 'extraordinarily high' standard. In fact, the petitioner must show facts unquestionably establishing his innocence."); *Johnson,* 159 F.Supp.2d at 606 ("Federal courts that have suggested that habeas relief could be granted upon newly discovered evidence

have set an extraordinary showing of petitioner's innocence before habeas relief could be granted.").

16. *See Herrera,* 506 U.S. at 417–18, 113 S.Ct. 853; *Dowthitt v. Johnson,* 230 F.3d 733, 741–42 (5th Cir.2000) (holding that newly discovered evidence including (i) a signed declaration from petitioner's nephew that a third

clude otherwise would result in an unwarranted disruption of the judicial process by relying on long after the fact inmate affidavits to require retrial of defendants years later, after evidence has become stale and witnesses have died or disappeared. Indeed, it takes little imagination to expect that such a contrary conclusion would invite a veritable avalanche of inmate affidavits long after retrials have become impractical. Thus, the rigorous *Herrera–Hunt* standard has a firm, practical, and sensible foundation.

In sum, even assuming defendant may pursue a freestanding claim of actual innocence under *Herrera*, defendant's actual innocence claim fails because the newly discovered evidence defendant offers, namely Jenkins' affidavit, does not establish that no rational jury could find defendant guilty of the murder beyond a reasonable doubt had it been provided Jenkins' testimony.

### IV.

Defendant argues in his reply to the government's opposition to his § 2255 motion that he is entitled to relief because the government withheld exculpatory information from the defense prior to and after trial in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, defendant argues that the government withheld a June 23, 1992

Federal Bureau of Investigation ("FBI") report of an interview with Corporal Williamson, a Lorton correctional officer, shortly after Ford's murder.

■■■ To begin with, it is important to note that defendant's addition of the *Brady* argument in his reply is essentially a motion to amend his petition and thus is subject to Rule 15(a), Fed. R. Civ. P., which makes clear that once a responsive pleading is served, a party must seek leave of court to amend a motion. While Rule 15(a) grants district courts broad discretion to grant or deny a party's motion to amend, it nonetheless provides that "leave [to amend] shall be freely given when justice so requires." [17] Caselaw interpreting the rule makes clear, however, that a court must not grant leave to amend if the requested amendment would be futile, *i.e.*, if the added claim would surely fail. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613–14 (4th Cir.1980).[18] Here, defendant's motion to amend to add a *Brady* claim must be denied because defendant fails to establish the elements of a *Brady* violation, *see infra*, and thus defendant's proposed amendment is futile.

■■■ Assuming, *arguendo*, that defendant is allowed to amend his initial successive motion and add a *Brady* claim, his claim would nonetheless fail at the threshold-

---

individual murdered the victim, (ii) an unsigned affidavit from a prison inmate that the third individual had confessed to the murder, and (iii) petitioner's written proffer of innocence did not warrant habeas relief); *Hunt*, 2000 WL 219755, at *2, 2000 U.S.App. LEXIS 2849, at *6–8; *but see Cherrix*, 131 F.Supp.2d at 767 (stating that newly discovered DNA evidence showing "that someone else's seminal fluid was found in [the victim's] body" "would illuminate [defendant's] federal habeas claims....").

**17.** Rule 15(a), Fed.R.Civ.P., has been applied to § 2255 motions. *See United States v. Duf-*

*fus*, 174 F.3d 333, 336 (3rd Cir.1999); *Lampton*, 2001 WL 263094, at *2, 2001 U.S. Dist. LEXIS 3043, at *5–6.

**18.** The caselaw provides several additional reasons to deny a motion to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendment." *Foman*, 371 U.S. at 182, 83 S.Ct. 227.

old. To establish a *Brady* violation, defendant must show three essential elements: (1) that the evidence in question was favorable to him, whether directly exculpatory or of impeachment value, (2) that the evidence was suppressed by the government, whether willfully or inadvertently and (3) that the evidence is material. *See Spicer v. Roxbury Correctional Inst.*, 194 F.3d 547, 555 (4th Cir.1999) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). In this context, evidence is material only if there is a reasonable probability that were it disclosed to the defense, the result of the proceedings would be different. *See United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

■ Defendant's *Brady* claim would fail because defendant could not show that the evidence allegedly withheld, the FBI report of Williamson's interview, was either (i) favorable or (ii) material. In support of his claim, defendant offers a heavily redacted version of the FBI report. Presumably, defendant believes that the report contains exculpatory information because Jenkins now reports in his affidavit that he told Williamson on the day after the murder that Cameron, not defendant, killed Ford.[19] Yet, defendant provides no evidence, only speculation, regarding what information Williamson in fact reported to the FBI and thus what evidence was contained in the report but has now been redacted. Because the unredacted portions of the report are not favorable or material[20] and the defendant makes no showing that the redacted portions are favorable or material, defendant's Brady claim must fail.

■ Yet, defendant seeks to avoid this conclusion by arguing that the government violated *Brady* when Williamson, a District of Columbia correctional officer and agent of the government, withheld the exculpatory information that Jenkins now reports from defendant. Even assuming *arguendo* that this evidence is material under the standard set forth in *Bagley*,[21] defendant's claim fails in this regard because the obligation to disclose evidence under *Brady* applies only to the prosecutor and not to witnesses who happen to be employed by a government entity, but do not otherwise assist the prosecutor in the investigation.[22]

19. Specifically, in his July 11, 2002 affidavit, Jenkins stated:

> The day following the murder, Ms. Williamson, came to see me at my dorm 16. She seemed scared and had over-extended her lunch period. I told her that I had been waiting for her in dorn [sic] 24 when Mr. Ford was murder [sic]. I told her what I had witnessed and who was involved. She told me that she did not want me to be involved because of our relationship [sic].

20. The FBI report contains the following four unredacted statements:

> (1) "After being advised of the identities of the interviewing agents and the nature of the interview,..."
> (2) "Came back to the 24 dorm, went upstairs, and found an inmate lying on the floor at the top of the steps. The victim was lying on his stomach, with his head on its right side."

> (3) "... did not recognize the victim."
> (4) "denied being in arts and crafts" (handwritten)

21. *See Bagley*, 473 U.S. at 682, 105 S.Ct. 3375 (holding that evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different").

22. *See Kyles v. Whitley*, 514 U.S. 419, 437–38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (holding that prosecutor is obligated under *Brady* to disclose evidence known not only to the prosecutor, but also to police investigators assisting the prosecutor); *Brady*, 373 U.S. at 87, 83 S.Ct. 1194 ("We now hold that the suppression *by the prosecution* of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective

Moreover, defendant has offered no evidence that the prosecutor was aware at any time during the investigation or trial of what Jenkins had allegedly told Williamson.

In sum, defendant fails to establish the essential elements of a *Brady* claim such that this claim must be dismissed. *See Spicer,* 194 F.3d at 555 (setting out the three essential elements of a *Brady* violation).

## V.

Defendant next contends, in his motion to amend his successive § 2255 motion, that a new trial is warranted because he received ineffective assistance of counsel. Specifically, defendant argues that trial counsel (i) failed to object to the government's reliance on theories during trial that were broader than what was charged in defendant's indictment and (ii) failed to object to false testimony to the grand jury.

Defendant's motion to amend to add a *Strickland* claim must be denied under the standard set out in Rule 15(a), Fed.R.Civ. P., on the ground that the addition of the claim would be futile because this claim is time-barred. *See Foman,* 371 U.S. at 182, 83 S.Ct. 227; *Davis,* 615 F.2d at 613–14; *see also infra.* Thus, defendant is not entitled to relief on the grounds of ineffective assistance of counsel.

 Assuming, *arguendo,* that defendant was allowed to amend his successive petition, defendant's ineffective assistance of counsel claim would nonetheless fail because it is untimely. Section 2255 provides that § 2255 motions are subject to a

one-year limitation period which runs from the latest of the following dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255. In the instant case, the limitation period runs from the date petitioner's conviction became final—March 20, 1995—the date the Supreme Court denied defendant's petition for a writ of certiorari. *See Clay v. United States,* 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for writ of certiorari, or when the time for filing a certiorari petition expires."). Defendant does not contend, and with good reason, that the limitations period runs from a later date. Thus, defendant had one year beginning March 20, 1995 to file a timely § 2255 motion on grounds of ineffective assistance of counsel at trial. This motion filed on February 20, 2003 clearly does not

---

of the good faith or bad faith *of the prosecution.*") (emphasis added); *United States v. Zavala,* 839 F.2d 523, 528 (9th Cir.1988) (holding that *Brady* does not apply to evidence "in the hands of the court or the probation office"); *United States v. Trevino,* 556 F.2d 1265, 1270 (5th Cir.1977) (same); Wayne R.

LaFave, Jerold H. Israel, & Nancy J. King, 5 Criminal Procedure 485 (2d ed. 1999) ("On the other hand, *the prosecution's obligation* has been held not to extend to independent agencies not involved in the investigation of the case, such as a probation department.") (emphasis added).

meet this filing requirement. It is therefore untimely and must be dismissed.[23]

In sum, defendant raises or seeks to raise three claims on his successive § 2255 motion namely (i) a freestanding claim of actual innocence based on Jenkins' affidavit, (ii) a *Brady* claim, and (iii) a *Strickland* claim. For the foregoing reasons, defendant is not entitled to relief on any of these claims and defendant's § 2255 motion and request for a new trial must be denied.

An appropriate order will issue.

---

**23.** It is worth noting that there are many circumstances, not present here, that justify tolling the limitations period. In *United States v. Prescott*, 221 F.3d 686, 687–88 (4th Cir.2000), the Fourth Circuit held that equitable principles justify tolling a limitations period when circumstances "external to the party's own conduct" prevent the filing of a timely motion. *See id.* at 688 (internal quotations omitted). For example, in *Brandon v. United States*, 89 F.Supp.2d 731 (E.D.Va. 2000), this Court found that the limitations period was tolled because the petitioner did not receive either actual or constructive notice of a Supreme Court denial of certiorari until after the one-year limitations period had expired. *See id.* at 734 (holding that extension of limitations period is justified only when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time") (quoting *Furr v. Robinson*, 2000 WL 152147, at *2 (E.D.Va. Jan.13, 2000)). No such circumstances were present here.